UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELMER D. CHARLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00876-TWP-DML |
| ) | |
| OFFICER L. LIGHTER, OFFICER D. ) | |
| WHITE, LT. T. THIBEAULT, and ) | |
| OFFENDER DELBERT E. WATSON, ) | |
| ) | |
| Defendants. ) | |

### ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CLAIMS AGAINST DELBERT E. WATSON FOR LACK OF JURISDICTION

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Lt. Thibeault, Officer Lighter, and Officer White ("the prison officials") (Docket No. 31). Plaintiff Elmer D. Charles ("Mr. Charles"), an inmate at the New Castle Correctional Facility ("NCCF"), was attacked by another offender, Delbert E. Watson ("Offender Watson"), on February 25, 2014, while housed in protective custody. Mr. Charles filed this civil action against the prison officials based on the theory that they failed to protect him from assault in violation of the Eighth Amendment. He has also sued Offender Watson for battery, a state law claim.

Mr. Charles' federal claims are brought pursuant to 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a). For the reasons explained below, Officer Lighter's, Officer White's and Lt. Thibeault's Motion For Summary Judgment is **granted** and the state law claims against Offender Watson are **dismissed** for lack of jurisdiction.

# I. **STANDARD OF REVIEW**

A motion for summary judgment asks the court to find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e). That is the case here.

Mr. Charles has opposed the motion for summary judgment, but his response is inadequate to create a genuine issue of material fact. Local Rule 56-1 provides that the defendant must provide a pro se plaintiff with notice to carefully read and follow rule when responding to a summary judgment motion. Here, that Notice was given on April 15, 2015. (Filing No. 33). Local Rule 56-

1(b) specifically requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. *See* L.R. 56-1(e); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). The court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003).

Mr. Charles' failure to properly oppose the motion for summary judgment with a statement of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of the defendants' statement of material facts for purposes of the Court acting on the motion for summary judgment. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This consequence does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997); *see also Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

## II. <u>UNDISPUTED FACTS</u>

Applying the standards set forth above, the undisputed material facts for the purposes of the prison officials' motion for summary judgment are as follows: On February 25, 2014, Mr. Charles was assaulted by Offender Watson. Prior to the assault, Mr. Charles told Officer Ames

3

that Offender Watson was angry with him and that Mr. Charles feared being stabbed by him. After Officer Ames shared this information, Lt. Thibeault and Officer Lighter conducted a shakedown of Offender Watson's cell in an attempt to locate weapons. Lt. Thibeault and Officer Lighter did not locate any weapons or significant contraband, but did locate "graphic letters" between Mr. Charles, Offender Watson, and another offender suggesting come sort of sexual relationship between the three. The letters were confiscated. Lt. Thibeault testified that he believed that because Mr. Charles and Offender Watson lived on different tiers of the M-Unit, rather than in cells on the same tier of the unit, Mr. Charles' safety concerns were adequately addressed. (Docket No.32-10 at 3).

After the shakedown, Mr. Charles was let out of his cell for recreation. During that same time period, Offender Watson was permitted to be released from his cell by way of a guard being manipulated into opening the door to Offender Watson's cell.[1] None of the named prison officials were in a position to manipulate the doors of cells within the M-Unit during this time period. Because Offender Watson was able to manipulate his release from his cell, Mr. Charles and

---

[1] Specifically, Mr. Charles claims that Offender Watson:

> got another offender to go to the pod front door and push the intercom button to get the attention of the control pod officer, who was Erika Lighter. The offender told the control pod officer that Delbert Watson was on the haircut list, that D. Watson needed out of his cell to get his haircut, at which point the control pod officer took the offenders word, without checking the list [and let Offender Watson out of his cell.]

Dkt. No. 35 at p. 5. Even if this statement was made under the penalty of perjury (it was not), there is no basis to conclude that Mr. Charles would have personal knowledge of what was occurring outside the pod door and in the control room. To the contrary, the undisputed record indicates that Erica Lighter was not in the control pod during the times relevant to this action. An incident report reflects that Officer J. McGrath was in the pod control unit at the relevant time. Dkt. No. 32-4.

Offender Watson were on the second floor of pod-1, M-Unit at the same time and Offender Watson then brutally attacked and assaulted Mr. Charles.

At the time of the assault, Lt. Thibeault was not in the M-Unit, but was in another part of the NCCF taking care of Human Resource matters. At the time of the assault, Officer Lighter was not in pod-1 of the M-Unit and was also not in the control bubble or control unit and therefore had no ability to open or shut the doors to any offender's cell. In fact, Officer Lighter was working in another pod of the M-Unit at the time of the assault and was a responder to Officer White's 10-10, or call for help, from that pod of the M-Unit.

Since October 15, 2012, Officer White has served as a transport officer. On February 25, 2014, Officer White was performing recreation line movements on the first floor of pod-1 of the M-Unit because he was not needed to transport any offenders. It was not typical for Officer White to work as a correctional officer. At the time of the attack, Officer White was the only correctional officer in his pod of the unit.

The M-Unit is a noisy place and the two tiers of the unit are separated by a concrete walk way through which one cannot see what is occurring on the other tier. Although Officer White heard yelling before moving upstairs, he did not consider that noise to be out of ordinary for the unit. After Officer White finished escorting the last offender on the bottom tier, he went upstairs and noticed that Mr. Charles had blood coming from his nose and that Offender Watson had blood on his hands and clothes. Despite the fact that the altercation had concluded, Officer White called a 10-10, which is a request for assistance due to a fight in progress, mechanically restrained Offender Watson, and sought medical assistance for Mr. Charles.

Subsequent to his call for assistance, multiple correctional officers, including Officer Lighter, responded and assisted in securing the pod, transporting Mr. Charles for medical care, and transporting Offender Watson to the segregation unit.

As a result of his assault on Mr. Charles, Offender Watson was charged with a code violation, Assault.

Shift supervisor Captain Jabin Collins ("Captain Collins") investigated this incident in order to prepare a Serious Incident Report. As a part of the investigation, Captain Collins concluded that Officer White was not attentive to the signs and sounds in the unit that could have alerted him to the fact that an incident was occurring therein.

### III. DISCUSSION

In this action, Mr. Charles alleges that the prison officers failed to protect him from an attack by another inmate on February 25, 2014, in violation of the Eighth Amendment. This claim is brought pursuant to 42 U.S.C. § 1983. Mr. Charles asserts that the prison officials failed to ensure his safety in the protective custody unit and that an officer should have been on the pod floor at all times, but at the time of the attack no officer was present or readily available. *See* Dkt. No. 35. Not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Seventh Circuit has repeatedly held that deliberate indifference is not a strict liability standard requiring jail officials to ensure the safety of their inmates. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003).

Prison officials have a duty to protect those in their custody from violence at the hand of other inmates. But liability of a prison official for failure to protect an inmate only materializes if

6

the official "'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer,* 511 U.S. at 837 (1994)). Thus, a claim that a prison official was deliberately indifferent to such a risk has both an objective and a subjective component. First, the harm to which the prisoner was exposed must be an objectively serious one. *See Gevas,* 798 F.3d 475 (being stabbed by cellmate constitutes serious harm); *Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005) ("a beating suffered at the hands of a follow detainee ... clearly constitutes serious harm").

The subjective prong of the deliberate indifference claim "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gervas,* 798 F.3d at 481 (*quoting Farmer*, 511 U.S. at 837). In addition to knowing that the inmate faced a substantial risk of serious harm, an official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; s*ee also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

**A.    Lt. Thibeault and Officer Lighter**

In this case, there are facts indicating that Lt. Thibeault and Officer Lighter had knowledge that Mr. Charles faced a risk of serious harm. There is no dispute that the threat of which Mr. Charles was complaining (being attacked by another inmate) was objectively serious. In addition, "[a] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gervas,* 798 F.3d at 481. In this case, Mr.

7

Charles told Officer Ames that he faced risk of harm from Offender Watson. Officer Ames told Lt. Thibeault and later that same day Mr. Charles was attacked by Offender Watson. Defendants Lt. Thibeault and Officer Lighter contend, however, that even if they knew of the risk of harm to Mr. Charles, they did not disregard that risk. As the Seventh Circuit has explained:

> [A]n officer who actually knew of a substantial risk to a detainee's safety is free from liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent." *Peate* [*v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)] (*citing Farmer*, 511 U.S. at 847, 114 S.Ct. 1970, 128 L.Ed.2d 811). "The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Id.* (*citing Farmer*, 511 U.S. at 844, 114 S.Ct. 1970).

*Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006) (*quoting Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005)).

Lt. Thibeault and Officer Lighter argue that there is no evidence which suggests that they acted in a manner that was devoid of care for the welfare of Mr. Charles or in a manner that served to condone the actions of Offender Watson. Instead, the undisputed material facts establish that Mr. Charles' fear of being attacked with a weapon was immediately addressed. Lt. Thibeault and Officer Lighter conducted a search of Offender Watson's cell in an attempt to locate contraband, specifically weapons, which Mr. Charles alleged would be used. Lt. Thibeault and Officer Lighter were unable to locate any weapons and only located communications between Mr. Charles and Offender Watson suggesting the existence of some sort of sexual relationship between them.

Following his search of Offender Watson's cell, Lt. Thibeault believed that because Mr. Charles and Offender Watson were housed in the protective custody unit on different tiers, thereby separated from one another, Mr. Charles' safety concerns were adequately addressed. In addition, neither Lt. Thibeault nor Officer Lighter were present in the M-Unit, pod 1, at the time Mr. Charles

8

was assaulted. Lt. Thibeault was in the Human Resource Department of the NCCF and Officer Lighter was performing recreation lines in another pod of the unit.

Although Mr. Charles claims without any supporting evidence that Officer Lighter opened the door that allowed Offender Watson an opportunity to attack, the undisputed material facts establish that Officer Lighter was a responder to the incident and therefore could not have been an operator of the doors within the control bubble or control unit. The undisputed fact is that Officer Lighter reported to the M-Unit, pod-1, after receiving the report of the assault and that upon her entry therein she assisted Mr. Charles in securing medical care and securing the pod. Under these circumstances, Lt. Thibeault and Officer Lighter responded reasonably by searching Offender Watson's cell and relying on others to do their jobs so that Offender Watson and Mr. Charles would not come into contact with each other. Given their reasonable response, Lt. Thibeault and Officer Lighter cannot be found to have been deliberately indifferent to the risk of harm Mr. Charles faced, and they are entitled to judgment as a matter of law on this basis.

**B.    Officer White**

As to Officer White, there exist no allegations or evidence suggesting that he had any knowledge of the fear expressed by Mr. Charles of Offender Watson prior to the incident. Moreover, Officer White has affirmed that he had no knowledge of any specific threat by Offender Watson to Mr. Charles. This fact is sufficient to entitle Officer White to summary judgment because the inquiry is not whether individual officers *should have* known about risks to an inmate's safety, but rather whether they *did* know of such risks. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (citing *Farmer,* 511 U.S. at 842–43).

Further, there is no evidence that Officer White was contemporaneously aware that Mr. Charles was being attacked. The Seventh Circuit has held that failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare "effectively condones the attack by allowing it to happen." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). There is no suggestion that Officer White was aware of the attack, but failed to intervene to stop it. *See Grieveson*, 538 F.3d at 778. Mr. Charles argues that he and other offenders tried to alert Officer White to the attack but Officer White did not respond until after the fight was over. But the undisputed evidence reflects that Officer White was not aware of the attack until it was over. He did not stand by and let the attack occur.

Captain Collins states in his affidavit that he investigated the incident and determined that it took Officer White 2-3 minutes to realize the yelling and screaming on the unit related to Offender Watson's attack on Mr. Charles and to transition between performing checks and running the recreation line on the first floor and getting upstairs to the second floor to address the fight. Dkt. No. 32-9. A Disciplinary Action Form was completed by Captain Collins in which he found that Officer White violated the 2013 Employee Handbook through his "inattention to duty." He wrote:

> On Tuesday, February 25, 2014 at approximately 1410 hours, a [sic] inmate fight occurred in M-1 where you were physically at doing Checks, etc. The fight occurred and last [sic] for a [sic] 2-3 minutes with out [sic] you realizing there was a fight. There were multiple ways that Would [sic] alert you to an issue but none were realized until the situation had already ended. You had no awareness about you and where You where you were [sic] at the time.

Dkt. No. 32-5 at p. 1.

Officer White testified that he was not working on the tier of M-Unit where the assault took place, that he could not tell any difference in noise within the unit while working, and that immediately upon observing the two offenders with blood on them but not fighting, he separated the two, mechanically restrained Offender Watson, and secured medical attention for Mr. Charles.

The Court agrees with Mr. Charles, that this information suggests that Officer White should have responded more quickly to the yelling that could have indicated a fight in progress. This failure, however, suggests negligence, not deliberate indifference. Negligence, even gross negligence, is insufficient to establish deliberate indifference under the Eighth Amendment. *See Farmer,* 511 U.S. at 835; *Mathis v. Fairman,* 120 F.3d 88, 92 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

In conclusion, there is no evidence upon which a reasonable jury could conclude that the prison officials are responsible for violations of Mr. Charles' constitutional rights. The prison officials are therefore entitled to summary judgment in their favor and their Motion for Summary Judgment (Docket No.31) is **GRANTED.**

## IV. SUPPLEMENTAL JURISDICTION

The foregoing resolves Mr. Charles' federal claims in the case. This Court's jurisdiction over his pendent claim under Indiana law is conferred by 28 U.S.C. § 1367(a). However, when a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998).

The general rule under these circumstances is to dismiss the pendent state law claims. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). In this case, the only remaining claim is a battery claim against Offender Watson based on Indiana law. The general rule will be followed here, and application of this rule dictates that the pendent state law battery claim against Offender Watson be dismissed for lack of jurisdiction.

## V. DOCKET CORRECTION

As a final matter, the docket in this case reflects that counsel for the prison officials has appeared for Delbert E. Watson. This is in error because no Counsel has appeared for Delbert E. Watson. This is problematic for two reasons. First, Delbert E. Watson may be under the impression that he is represented by counsel when he is actually proceeding *pro se*. Second, Delbert E. Watson has not necessarily been receiving copies of the parties' filings and this Court's orders.

The **Clerk is directed** to correct the docket to reflect that Delbert E. Watson is proceeding *pro se* and directed to mail copies of the entries in this matter to Delbert E. Watson. Given the dismissal of the claims against Delbert E. Watson in this action for lack of jurisdiction, no further remedial measures are necessary.

## VI. CONCLUSION

Lt. Thibeault's, Officer Lighter's, and Officer White's Motion for Summary Judgment (Docket No. 31) is **GRANTED**.

The state law claims against Delbert E. Watson are **DISMISSED** for lack of jurisdiction in federal court.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 2/19/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Elmer D. Charles, # 985019
Indiana State Prison
Inmate Mail/Parcels
One Park Row
Michigan City, Indiana  46360

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Delbert E. Watson, # 864363
New Castle Correctional Annex
1000 Van Nuys Road
New Castle, Indiana  47362